UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID L. GREEN,

        Plaintiff,

v.                                                    Case No. 1:07-cv-654
                                                      Hon. Janet T. Neff

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI).  For the reasons stated below, the undersigned recommends that this action be reversed and remanded.

Plaintiff was born on January 3, 1959 and graduated from high school (AR 55, 82).[1] He alleges a disability onset date of July 15, 2002 (AR 55).  Plaintiff had previous employment as an order filler (stock puller), printer/pressman, and assembly line worker (AR 26, 98).  In his disability report from July 2003, plaintiff identified his disabling conditions as the inability to lift over 15 pounds and "having trouble finding work" (AR 76).  In a previous disability report from September 2002, plaintiff identified his disabling conditions as rheumatoid arthritis and lower back troubles (AR 66).  After administrative denial of plaintiff's claim, an Administrative Law Judge

_____

[1] Citations to the administrative record will be referenced as (AR "page #").

(ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on October 25, 2006 (AR 19-28). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I.  LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.  *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence.  *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months.  *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-

step analysis:

> The Social Security Act requires the Secretary to follow a "five-step
> sequential process" for claims of disability.  First, plaintiff must demonstrate that she
> is not currently engaged in "substantial gainful activity" at the time she seeks
> disability benefits. Second, plaintiff must show that she suffers from a "severe
> impairment" in order to warrant a finding of disability.  A "severe impairment" is one
> which "significantly limits . . . physical or mental ability to do basic work activities."
> Third, if plaintiff is not performing substantial gainful activity, has a severe
> impairment that is expected to last for at least twelve months, and the impairment
> meets a listed impairment, plaintiff is presumed to be disabled regardless of age,
> education or work experience. Fourth, if the plaintiff's impairment does not prevent
> her from doing her past relevant work, plaintiff is not disabled. For the fifth and final
> step, even if the plaintiff's impairment does prevent her from doing her past relevant
> work, if other work exists in the national economy that plaintiff can perform, plaintiff
> is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations

caused by her impairments and the fact that she is precluded from performing her past relevant work

through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003).

However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant

number of jobs in the economy that accommodate the claimant's residual functional capacity

(determined at step four) and vocational profile."  *Id.*  If it is determined that a claimant is or is not

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861

F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991).  "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date."  *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).  *See Brooks v. Sullivan*,  No. 90-5947, 1991 WL 158744 at *2 (6th Cir. Aug. 14,1991) ("[t]o establish medical eligibility for SSI, plaintiff must show either that he was disabled when he applied for benefits . . . or that he became disabled prior to the Secretary's issuing of the final decision on this claim . . . 20 C.F.R. §§ 416.335, 416.330").

## II.   ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation.  Following the five steps, the ALJ initially found that plaintiff  has not engaged in substantial gainful activity since the alleged onset of disability (AR 21).  Second, the ALJ found that he suffered from the severe impairment of degenerative disc disease (AR 21).  At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 23).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> to lift and carry 20 pounds maximum but only occasionally, and 10 pounds frequently while sitting, standing, and walking up to 6 hours in a typical work day.  He also requires the ability to alternate sitting, standing, and walking at will.  He should avoid concentrated exposure to extreme heat, cold, wetness, humidity, and vibrations; only occasionally reach in all directions; frequently but not constantly handle/finger; and avoid working at heights.  Secondary to his mild depression, work should be simple and unskilled with an SVP rating of 1 or 2; jobs should not require him to compute, calculate, problem solve, or reason; jobs should not involve concentration on

detailed/precision tasks or multiple/simultaneous tasks; and jobs should not have production quotas mandating a specific number of pieces per hour or with a down line co-worker depending on his productivity.

(AR 23).  The ALJ found that plaintiff could not perform his past relevant work (AR 26).

At the fifth step, the ALJ determined that plaintiff had the RFC to perform a range of light work (AR 27).  Specifically, the ALJ found that plaintiff could perform the following work in the regional economy (Lower Peninsula of Michigan): occupations in the clerical industry (13,000 jobs); cashier (16,000 jobs); and ticket seller (2,000 jobs) (AR 27).  Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 27-28).

## III.  ANALYSIS

Plaintiff raised four issues for review.

**A.      Whether plaintiff is entitled to SSI.**

**1.      The ALJ failed to give adequate weight and consideration to the combined effects of the exertional and non-exertional disabilities of plaintiff contrary to 20 C.F.R. § 404.1527.**

Plaintiff's argument is difficult to follow. He does not apply § 404.1527, or any other regulation, to the facts of this case.[2]  Rather, plaintiff states that he suffers from a combination of mental impairments, that "[t]he ALJ failed to list any of the mental disabilities as a severe impairment," and that "[t]here are x-ray studies and MRI's which confirm numerous disorders of the joints and spine, both lumbar and cervical."  Plaintiff's Brief at 11. While the ALJ found that plaintiff suffered from the severe impairment of degenerative disc disease, he determined that

---

[2] The court notes that because this is an SSI case, the appropriate regulation would be 20 C.F.R. § 416.927 rather than 20 C.F.R. § 404.1527.

plaintiff's hypertension, Hepatitis C and dysthymia/depression were not "severe" impairments under

the regulations (AR 21-22).  In reaching this determination, the ALJ observed that no physician

identified any significant limitations resulting from these non-severe impairments and that there was

no objective evidence that his "social functioning, ability to complete daily activities, or sustain and

persist on tasks were more than minimally restricted by a defect or distortion of his mental

processes" (AR 23).  Nevertheless the ALJ did consider the effects of plaintiff's non-severe

impairments, as evidenced by the numerous limitations set forth in the RFC determination (AR 23).

Accordingly, the ALJ considered and accounted for limitations caused by plaintiff's non-severe

impairments.

> **2.       The ALJ failed to give adequate weight and consideration
> to the disability determinations of the U.S. Department of
> Veterans Affairs which assigned a 40% combined service
> connected disability which has now been increased to
> 70%.**

At the administrative hearing, plaintiff testified that he was currently receiving

disability from the VA at 50% and that the award is now on appeal (AR 116-23, 791).  Contrary to

this testimony, the administrative record reflects that as of September 20, 2005, the VA assigned

plaintiff an "overall or combined rating" for service connected disability of 40% (AR 117). Plaintiff

contends that the ALJ erred by failing to acknowledge the VA disability rating and give it adequate

consideration determining his disability claim.

For purposes of this report and recommendation, it is inconsequential whether the

VA disability was 40% or 50%. Under the regulations, the ALJ is not bound to accept the disability

ratings made by the VA. Specifically, 20 C.F.R. § 416.904 provides in pertinent part that:

> A decision by any nongovernmental agency or any other governmental
> agency about whether you are disabled or blind is based upon its rules and is not our

decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law.  Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

Notwithstanding this rule, the ALJ did consider plaintiff's VA rating, as discussed below.

Although a VA disability rating is not binding on the ALJ, courts have determined that a VA rating of total disability is entitled to some weight in determining a Social Security disability.  *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) ("[a] VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a certain amount of weight and must be considered by the ALJ"); *Stewart v. Heckler*, 730 F.2d 1065, 1068 (6th Cir. 1984) (noting that the record contained a VA insurance disability award marked "total disability").  Nevertheless, plaintiff does not provide any authority from the Sixth Circuit, and this court has found none, that reversed an ALJ's decision for failing to give weight to a VA decision of anything less than total disability.  Accordingly, the ALJ did not err in evaluating plaintiff's VA disability rating.

**B.      The determination by the ALJ that plaintiff does not suffer from a severe mental disorder or combination of disorders is not supported by substantial evidence in the record.**

Next, plaintiff contends that he suffers from a well documented history of mental disabilities, that he has been receiving pharmacological intervention since at least August 2003 and that the ALJ did not adequately address this history reflected in the records of Dr. Hughes, Dr. Strang and the VA Medical Center.  The court disagrees.

In his decision, the ALJ points out that while plaintiff reported a history of depression since childhood, there is no documentation of psychological treatment prior to 2004 (AR 22). Contrary to plaintiff's contention, the ALJ adequately addressed the records of his mental condition.

7

The ALJ reviewed Dr. Strang's consultative evaluation, which  indicated that plaintiff: had a full scale IQ of low normal; a mild tendency to report more problems than may be objectively present; was hypersensitive; and was fearful of rejection and disapproval of others (AR 22, 219-20).  The ALJ noted that plaintiff could perform simple mathematical calculations and had an adequate memory (AR 22, 219-20).  In addition, Dr. Stang found plaintiff to be cooperative, in contact with reality and with a spontaneous stream of mental activity (AR 22, 219-20).

In addition, the ALJ reviewed plaintiff's records at the VA.  At his initial evaluation at the VA in February 2004, plaintiff's treating psychiatrist, Gaudencio Martinez, D.O., found that he was: alert; oriented; motivated; had an appropriate affect; had a euthymic mood; and had an intact memory (AR 22, 453).  The doctor diagnosed dysthymia, continued plaintiff's his prescription for Elavil and added Zoloft (AR 22, 453-54).  The ALJ observed that progress notes from plaintiff's treating therapist at the VA, John Deikis, Ph.D., reported that plaintiff's symptoms of depression to be well controlled in October 2004 and throughout 2005 (AR 22).  By June 2005, Dr. Deikis reported that plaintiff's condition had so improved that he did not need to return to counseling unless he had a new problem (AR 22, 664).  Specifically, Dr. Deikis found that plaintiff: was fairly consistent in attending appointments; appeared to be compliant with medications; remained free from marijuana since agreeing to quit; candidly discussed his mood, thoughts and feelings; made modest use of cognitive coping techniques; reported improved mood since last year; and reported fishing more often in the last year (AR 664).

The ALJ's decision did not address an October 21, 2005 independent medical examination of plaintiff performed for his attorney by Michael G. Hughes, M.D., a board certified neurosurgeon, with respect to plaintiff's mental condition.  However, the ALJ's failure to address

the report was not error.  Dr. Hughes concluded that plaintiff had a chronic pain problem, lumbar

degenerative disc disease, cervical spondylosis, degenerative problems in his elbows, a history of

depression  and "a history of phobia of not wanting to leave his home" (AR 721).   While Dr.

Hughes thought that plaintiff had "emotional and psychological factors in his life that possible could

interfere with his working," his opinion addressed plaintiff's physical RFC (AR 721-22).  In fact,

the doctor declined to address the "emotional and psychological factors," stating that he "would

leave that to an expert psychologist or psychiatrist" (AR 722).  Given this record, it appears to the

court that the ALJ adequately addressed plaintiff's history of mental impairments.

> **C.**     **The decision by the ALJ that plaintiff is not under a
> "disability" as defined in the Social Security Act at any
> time through the date of his decision is not supported by
> substantial evidence in the record.**

Once again, plaintiff's brief is difficult to follow.  He appears to raise two general

claims: (1) that his Global Assessment of Functioning (GAF) scores indicate that he is mentally

disabled and (2) that he suffers from disabling pain.

> **1.     GAF Scores**

Plaintiff contends that the ALJ failed to address his GAF scores of 49 (January 2004)

and 50 (February 2004) (AR 220, 465). The GAF score is a subjective determination that represents

"the clinician's judgment of the individual's overall level of functioning" on a hypothetical continuum

of mental health-illness.  American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental

Disorders (DSM-IV-TR)*, (4th ed., text rev., 2000), pp. 32, 34.  The GAF score is taken from the GAF

scale, which rates individuals' "psychological, social, and occupational functioning," and "may be

particularly useful in tracking the clinical progress of individuals in global terms."  *Id*. at 32. The

GAF scale ranges from 100 to 1.  *Id.* at 34.  At the high end of the scale, a  person with a GAF score

of 100 to 91 has "no symptoms." *Id.* At the low end of the GAF scale, a person with a GAF score

of 10 to 1 indicates "[p]ersistent danger of hurting self or others (e.g., recurrent violence) OR

persistent inability to maintain minimal personal hygiene OR serious suicidal act with clear

expectation of death." *Id.*

Here, plaintiff's Plaintiff's GAF scores of 49 and 50 lie within the 41 to 50 range,

which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent

shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no

friends, unable to keep a job)." *Id.* The Sixth Circuit has rejected the proposition that a determination

of disability can be based solely on the unsupported, subjective determination of a GAF score. *See*

*Rutter v. Commissioner of Soc. Sec.*, No. 95-1581, 1996 WL 397424 at *2 (6th Cir. July 15, 1996).

"[T]he determination of disability must be made on the basis of the entire record and not on only

some of the evidence to the exclusion of all other relevant evidence") (citation omitted). *Hardaway*,

823 F.2d at 927. Accordingly, plaintiff cannot rely solely on subjectively assigned GAF scores to

establish the existence of a mental disability.[3]

### 2.    Disabling pain

Next, plaintiff contends that he suffers from disabling pain.    An ALJ's evaluation

of a claimant's pain is admittedly inexact. *Jones v. Secretary of Health and Human Servs.*, 945 F.2d

1365 (6th Cir. 1991).   As the Sixth Circuit noted in *Jones*:

> The measure of an individual's pain cannot be easily reduced to a matter of
> neat calculations.  There are no x-rays that can be taken that would objectively show

---

[3] In this regard, the court notes that plaintiff's condition apparently improved by April 2004, when Dr. Martinez assigned him a GAF score of 55, which lies within the 51 to 60 range, indicating "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR any moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *DSM-IV-TR*, p. 34.

the precise level of agony that an individual is experiencing.  Hence, in evaluating the intensity and persistence of pain, both physicians and laymen alike, must often engage in guesswork.

*Id.* at 1369.  Despite the inexact nature of measuring a claimant's pain,  the ALJ must nevertheless evaluate the alleged pain and determine whether the claimant suffers from disabling pain.

Here, the ALJ found that:

all the treating and examining physicians arrived at essentially the same conclusion; i.e., that the claimant's subjective reports of pain were his greatest complaint, and that he had no neurological and only mild orthopedic deficits.  Their conclusion was that he could perform activities in which he is allowed to change positions frequently, lift up to 20 pounds, and that activities should not involve repetitive bending, lifting, twisting of the low back and right elbow.  This is also consistent with the findings of the State agency reviewers.  Accordingly, controlling weight is accorded these consistent opinions.

(AR 26).  After considering the entire record, the ALJ concluded that "neither the objective evidence of record, nor the claimant's own statements and activities, supports a conclusion that the was unable to perform any substantial gainful activity since his July 15, 2002 alleged disability date." (AR 26).

While it is well-settled that pain may be so severe that it constitutes a disability, a disability cannot be established by subjective complaints of pain alone.  "An individual's statement as to pain or other symptoms shall not *alone* be conclusive evidence of  disability."  *Cohen v. Secretary of Department of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), quoting 42 U.S.C. § 423(d)(5)(A) (emphasis added).  Rather, objective medical evidence that confirms the existence of pain is required.  *Shavers v. Secretary of Health and Human Services*, 839 F.2d 232, 234-235 (6th Cir.1987). *See, e.g., McGuire v. Commissioner*, No. 98-1502, 1999 WL 196508 at * 7 (6th Cir. March 25, 1999 ),  *citing Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (a claimant's self-reports of pain do not constitute objective medical evidence).

In *Duncan v. Secretary of Health and Human Servs.*, 801 F.2d 847 (6th Cir. 1986), the Sixth Circuit fashioned a two-prong test for evaluating an alleged disability based upon pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1037-1039 (6th Cir. 1994) (the *Duncan* analysis is a "succinct form" of the Social Security Administration's guidelines for use in analyzing a claimant's subjective complaints of pain as set forth in 20 C.F.R. § 404.1529 and § 416.929).  To meet the first prong of the *Duncan* test, the claimant must present objective evidence of an underlying medical condition. *Duncan*, 801 F.2d 847 at 853.  In order for a claimant to meet the second prong of the *Duncan* test "(1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain." *Id.*

The ALJ's finding that plaintiff suffered from the severe impairment of degenerative disc disease (AR 21) satisfies the first prong of the *Duncan* test.  With respect to the first part of the second prong of the *Duncan* test, plaintiff must demonstrate that the objective medical evidence confirms the severity of his pain.  Here, the ALJ concluded that plaintiff suffered only mild orthopedic deficits (AR 26).  The record supports this conclusion.  In January and March 2003, plaintiff reported shoulder discomfort, arm pain and headaches to his orthopedic physician, William J. Comai, D.O.  The doctor noted that plaintiff might have right sided C6 and left sided C7 nerve root compression (AR 177).  However, Dr. Comai did not view this condition as requiring surgery and suggested a course of physical therapy to diminish plaintiff's symptoms (AR 177).  This conservative course of treatment suggests that plaintiff did not suffer from a condition expected to give rise to disabling pain. *See, e.g., McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680 at * 4 (6th Cir. May 19, 2000);  *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Bryant v. Chater*,

No. 96-3426, 1997 WL 160372 at * 4 (6th Cir. April 4, 1997).  In May 2003, Dr. Comai noted that

plaintiff had a normal EMG and felt that there was no nerve damage (AR 176).  By June 2003, the

doctor stated in a deposition that he would restrict plaintiff from lifting more than 15 pounds and

from repetitive work with the elbow (AR 717).

Dr. Bert Korhonen examined plaintiff in August 2003 and found that he had minimal

degenerative changes in the elbow and some narrowing, but no nerve root impingement, in his

cervical spine (AR 197-98).  The doctor noted plaintiff's reports of headache and numbness, but

found no objective evidence to support the symptoms, observing that:

> What is puzzling to me is the dimunition of pinprick involving the entire right upper
> extremity from the shoulder distally to the fingers.  This does not correspond to any
> known dermatome patterns and in my experience this has been associated with
> symptoms magnification.

(AR 197).

As previously discussed, Dr. Hughes reviewed plaintiff's medical records for counsel

in October 2005 (AR 716-22).  The doctor concluded that while plaintiff complained of pain in the

cervical area, lumbar area, elbow and legs, he had no neurological deficit (AR 722).  The doctor also

concluded that plaintiff could perform sedentary work which would allow him to change position

from sitting, to standing and occasional walking around (AR 722).  The opinions expressed by Drs.

Comai, Korhonen and Hughes fail to support plaintiff's claim that he suffered from disabling pain.

On the contrary, Drs. Comai and Hughes felt that plaintiff could work with restrictions.

In addition, the ALJ properly considered plaintiff's household and social activities

in evaluating complaints of pain.  *See Blacha v. Secretary of Health and Human Servs.*, 927 F.2d

228, 231 (6th Cir. 1990). The ALJ observed that plaintiff engaged in a variety of activities.  In

January, 2004, plaintiff reported to a consultative examiner that he performed light house cleaning

and cooking (AR 25, 219). Then, in September 2004, plaintiff reported that he could perform some

household chores and do some walking (AR 25-26, 598).  He had also been painting his house (AR

25-26, 598).  In May 2005, plaintiff reported to a psychiatrist that he had increased his recreational

activities, including fishing, from the previous year (AR 25, 664).  In August 2005 plaintiff reported

that his daily activities included using his computer, vacuuming the house, cleaning his pet birds'

cages and occasionally walking (AR 24, 706).  Such activities are not indicative of a person

suffering from disabling, work preclusive pain.

Finally, plaintiff fails to meet the second part of the second prong of the *Duncan* test

because he provides no objective medical evidence indicating that his condition "is of a severity

which can reasonably be expected to give rise to the alleged pain." *Duncan*, 801 F.2d at 853. As

previously discussed, neither Drs. Comai, Korhonen nor Hughes identified an objective medical

condition that would give rise to the alleged disabling pain.

The court's analysis does not suggest that plaintiff does not suffer from pain.  Rather,

the evidence indicates only that plaintiff's pain was not disabling for purposes of receiving SSI

benefits.  Even if this court might reach a different conclusion considering the evidence *de novo,*

there is no basis on this limited appellate review to disturb the ALJ's decision on this matter.

> **D.** **The ALJ's hypothetical questions did not take into account all of plaintiff's limitations.**

Finally, plaintiff contends that there is a discrepancy between the hypothetical

questions posed to the VE and the ALJ's RFC determination.   Plaintiff's brief at 11.  I agree and

recommend a reversal and remand on this issue.  An ALJ's finding that a plaintiff possesses the

capacity to perform substantial gainful activity that exists in the national economy must be supported

by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs.

*Varley v. Secretary of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This evidence

may be produced through reliance on the testimony of a VE in response to a hypothetical question

which accurately portrays the claimant's physical and mental impairments.  *Id.*   However, a

hypothetical question need only include those limitations which the ALJ accepts as credible.  *See*

*Blacha v. Secretary of Health and Human Servs.*, 927 F.2d 228,  231 (6th Cir. 1990).  *See also*

*Stanley v. Secretary of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not

obliged to incorporate unsubstantiated complaints into his hypotheticals").

        The VE's conclusion that a hypothetical person with plaintiff's limitations could

perform 31,000 jobs was based upon a series of hypothetical questions (AR 800-02).  The first

hypothetical contained the following limitations:

> [A]ssume a hypothetical individual can meet the demands of light work, who should
> avoid constant, repeated exposure to extreme cold, heat [inaudible] humidity and
> vibrations.   Who should only occasionally reach over head, or should only
> occasionally reach over head or in any direction and frequent, but not constantly
> handling finger [sic].  Should avoid working at unprotected heights and who should
> only have jobs of one, two or three set instructions.  Should have no jobs that would
> require concentrate [sic] on one detail or precision task or multiple and simultaneous
> tasks.  Should have no job that would require the individual to calculate, compute,
> problem solve or reason.  Should have no job that would require producing a specific
> number of pieces per hour, but [sic] that would have a down or up line dependent co-
> worker.

(AR 800-01).  Given these limitations, the VE testified that such a hypothetical person could not

perform plaintiff's past relevant work, but could perform the following jobs in Michigan's Lower

Peninsula: unskilled clerical worker (27,870); gate security guard (1,500); and host in a restaurant

(2,000) (AR 801).

        After receiving this testimony, the ALJ added another limitation, i.e., that the

hypothetical person required "a sit-stand option" at work (AR 801).  The VE testified that this

15

additional limitation would reduce the clerical work to 13,000 jobs and eliminate the gate security guard and restaurant host positions (AR 802).  Then, the VE clarified the ALJ's limitation on jobs requiring the ability to calculate and compute (AR 802).  After determining that this limitation did not rule out working a cash register or making change, the VE testified that the hypothetical individual could perform 16,000 cashier positions and 2,000 ticket sale positions (AR 802).

Plaintiff correctly points out that the ALJ's RFC included a limitation that plaintiff "be able to walk at will" (AR 23).  However, none of the hypothetical questions posed to the VE included this particular limitation.  While the ALJ's hypothetical questions included "a sit-stand option," this limitation is not synonymous with the ability "to walk at will."  Such a requirement could have a significant effect on the pool of jobs that plaintiff could perform.  In this regard, the VE testified that a work restriction allowing plaintiff to walk from the work station "would be a problem," and in fact could be work preclusive if plaintiff needed to spend five minutes each hour walking around and needed to take additional unscheduled breaks (AR 803-05).  Although nothing in the current record indicates whether plaintiff's need to "walk at will" would be work preclusive, this additional limitation would likely reduce the 31,000 jobs identified by the VE.  The ALJ's failure to include this additional limitation in the hypothetical question amounts to error.  Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of the vocational evidence at Step Five of the  sequential process.

### IV.    Recommendation

For these reasons, I  respectfully recommend that the Commissioner's decision be

reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for re-evaluation of the

vocational evidence.


Dated:  August 4, 2008                                    /s/ Hugh W. Brenneman, Jr.
                                                                     HUGH W. BRENNEMAN, JR.
                                                                     United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk
of the Court within ten (10) days after service of the report.  All objections and responses to
objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections
within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474
U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).